## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LARRY PEAIRS, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                  **NO. 20-652-SDD-RLB**

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY**

### ORDER

Before the Court is Plaintiffs' Motion to Quash Subpoena Duces Tecum and Notice of Corporate Deposition of Triple P Ranch, Inc. ("Motion to Quash"). (R. Doc. 25). The motion is opposed. (R. Doc. 29). Plaintiff filed a Reply. (R. Doc. 33).

**I.    Background**

Larry Peairs and Patricia Peairs (collectively, "Plaintiffs") bring this action to obtain uninsured/underinsured motorist ("UM") coverage under their policy with State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"). (R. Doc. 1-2). Plaintiffs allege that on August 30, 2018, while operating their automobile, they were involved in three-car accident when rear-ended by another automobile, and, as a result of the accident: (1) "Mr. Peairs sustained injuries to his neck, back, hip, left shoulder, right thumb, and numbness in his feet and legs" and (2) "Mrs. Peairs sustained injuries to her neck, back, thoracic spine, bladder incontinence, posturing of the upper extremities, and headaches." (R. Doc. 1-2 at 1-2). Plaintiffs each seek recovery for "past, present, and future pain and suffering; immobility; decreased quality of life and lifestyle; [and] past, present, and future medical expenses." (R. Doc. 1-2 at 2). The insurer for the at-fault driver, Safeway Insurance Company, tendered its full policy limits of $15,000 to Mrs. Peairs and $15,000 to Mrs. Peairs. (R. Doc. 1-2 at 2). Prior to the filing of the

lawsuit, State Farm unconditionally tendered $20,4235 to Mr. Peairs and $18,166 to Mrs. Peairs. (R. Doc. 1-2 at 3).

On September 30, 2020, State Farm removed the action asserting the Court has diversity jurisdiction under 28 U.S.C. § 1332. (R. Doc. 1). Plaintiffs have filed a First Amended and Supplemental Complaint raising bad faith claims under La. R.S. 22:1892 and 22:1973 with respect to State Farm's post-litigation conduct. (R. Doc. 21).

On June 23, 2021, State Farm deposed Mr. Peairs. (R. Doc. 25-2). At the deposition, State Farm questioned Mr. Peairs regarding the operations of his business Triple P Ranch, Inc., and Mr. Peairs testified that he was not making a lost wage claim.

Plaintiffs represent that on October 21, 2021, Defendant served on Mrs. Peairs a Rule 30(b)(6) Notice and Subpoena issued to Triple P Ranch, Inc., which is solely owned by Mr. Peairs. (R. Doc. 25-1 at 4). The subpoena sought compliance in Baton Rouge, Louisiana, on November 2, 2021. (*See* R. Doc. 25-4).

On October 26, 2021, Plaintiffs filed the instant Motion to Quash, which seeks an order quashing the subpoena and Rule 30(b)(6) deposition notice on the bases that the information sought is disproportionate to the needs of this case, irrelevant, overly broad, and cumulative. (R. Doc. 25).

The Court ordered expedited briefing and stayed any obligations to comply with the subpoena and Rule 30(b)(6) deposition notice until resolution of the instant Motion to Quash. (R. Doc. 26). The parties subsequently filed a joint motion seeking extensions of the deadlines to complete discovery and file dispositive motions. (R. Doc. 27). The Court granted the motion in part, extending, among other things, the deadline to complete non-expert discovery to December 17, 2021. (R. Doc. 28).

**II.    Law and Analysis**

    **A.    Legal Standards for Discovery**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed.

R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See*, *e.g.*, *Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction. . . ." Fed. R. Civ. P. 45(d)(1). Similarly, a motion to quash or limit a subpoena is to be considered by the court of compliance. *See* Fed. R. Civ. P. 45(d)(3). As the instant subpoena seeks compliance in Baton Rouge, Louisiana, this is the court for the district where compliance is required.

**B.     Analysis**

The Rule 30(b)(6) Notice and Subpoena at issue seek compliance by Triple P Ranch, Inc. (R. Doc. 25-4). The "Deposition Topics" listed in Exhibit A include the following 26 topics of information pertaining to the operations of Triple P Ranch, Inc., including its fuel expenses, veterinarian records, amounts of all sales and purchases, tax returns, ledgers, and listings of assets and liabilities from January 1, 2015 to the present:

> 1. The number of cows owned by Triple P Ranch, Inc. from January 1, 2015 to present;
>
> 2. The number of bales of hay accumulated per year by Triple P Ranch, Inc. from January 1, 2015 to present;
>
> 3. The number of acres and locations cut and bailed for hay by Triple P Ranch, Inc. from January 1, 2015 to present;
>
> 4. Any and all fuel expenses for Triple P Ranch, Inc. from January 1, 2015 to present;
>
> 5. Any and all veterinarian records, bills and prescriptions from January 1, 2015 to present;
>
> 6. Any and all labor on Triple P Ranch, Inc., including but not limited to, equipment and inventory used, from January 1, 2015 to present;
>
> 7. Any and all repairs and maintenance on or for Triple P Ranch, from January 1, 2015 to present;
>
> 8. Any and all employment/personnel files of Larry L. Peairs (DOB 9/27/58; SSN: XXXXX-2859);
>
> 9. To testify with regard to the locations where Larry L. Peairs (DOB 9/27/58; SSN:XXX-XX-2859) worked as well as the dates he worked at these locations and the job duties he performed from January 1, 2015 to present;
>
> 10. The corporate structure of Triple P Ranch, Inc., including but not limited to, executive management, safety personnel, chain of command, employees, hired help and job descriptions and responsibilities;
>
> 11. Any projects, project records, and/or work performed by You which involved Larry L. Peairs (DOB 9/27/58; SSN: XXX-XX-2859) from January 1, 2015 to present;

12. To testify regarding any and all work performed by You which involved Larry L. Peairs (DOB 9/27/58; SSN: XXX-XX-2859) from January 1, 2015 to present;

13. Any and all information as to the identity, name, address, employer, job title, job duties, and job assignments of any and all individuals who worked, provided services, maintained, and/or were assigned to work at Triple P Ranch, Inc. from January 1, 2015 to present;

14. Any and all sales literature including, but not limited to sales brochures and promotional literature regarding products, livestock, or equipment (make and model) marketed, promoted, sold or used and dollar amounts of all sales at Triple P Ranch, Inc. from January 1, 2015 to present;

15. Any and all evidence of purchases including, but not limited to, receipts and proof of purchase regarding products, livestock, or equipment (make and model) marketed, promoted, sold or used, and dollar amounts of all purchases at Triple P Ranch, Inc. from January 1, 2015 to present;

16. Lists, indexes, or other information reflecting the names of companies, individuals, or locations who supplied or sold products, livestock and/or equipment (make and model) manufactured, marketed, promoted, sold or used within Triple P Ranch, Inc. from January 1, 2015 to present;

17. The contents of any plans, drawings, blueprints, specifications, sketches, diagrams, or other documents of any type referring to, describing, reflecting, memorializing, or otherwise referencing any work or services of any kind performed by Triple P Ranch or its subcontractors at the Triple P Ranch, Inc. from January 1, 2015 to present;

18. Any and all information as to the activities and day to day maintenance at Triple P Ranch, Inc. from January 1, 2015 to present;

19. Any and all information as to tax returns and schedules for Triple P Ranch, Inc. from January 1, 2015 to present, including but not limited to Schedule F (Form 1040), Schedule E (Form 1040), Form 4797 and Form 4835 from January 1, 2015 to present.

20. Any and all information regarding ledgers for Triple P Ranch, Inc. from January 1, 2015 to present;

21. A complete annual listing of assets and liabilities of Triple P Ranch, Inc. from January 1, 2015 to the present.

22. Your document retention policies;

23. To discuss the search undertaken to locate the documents identified in Exhibit "B";

24. To discuss the documents and items sought for in Exhibit "B" and where they were located;

25. To authenticate the documents responsive to Exhibit "B";

26. To discuss the contents of documents produced in response to Exhibit "B".

(R. Doc. 35-4 at 6-8). The subpoena similarly seeks the following documents pertaining to the operations of Triple P Ranch, Inc. in the attached Exhibit B:

1. Any and all documents regarding the number of cows owned by Triple P Ranch, Inc. from January 1, 2015 to present;

2. Any and all documents regarding the number of bales of hay accumulated per year by Triple P Ranch, Inc. from January 1, 2015 to present;

3. Any and all documents regarding number of acres and locations cut and bailed for hay by Triple P Ranch, Inc. from January 1, 2015 to present;

4. Any and all documents regarding fuel expenses for Triple P Ranch, Inc. from January 1, 2015 to present;

5. Any and all documents regarding veterinarian records, bills and prescriptions from January 1, 2015 to present;

6. Any and all documents regarding labor on Triple P Ranch, Inc., including but not limited to, equipment and inventory used, from January 1, 2015 to present;

7. Any and all documents regarding repairs and maintenance on or for Triple P Ranch, from January 1, 2015 to present;

8. Any and all employment/personnel files of Larry L. Peairs (DOB 9/27/58; SSN: XXXXX-2859);

9. Any and all documents regarding the location where Larry L. Peairs (DOB 9/27/58; SSN: XXX-XX-2859) worked under your employ from January 1, 2015 to present;

10. Any and all documents regarding the equipment that was utilized and/or operated where Larry L. Peairs (DOB 9/27/58; SSN: XXX-XX-2859) worked, including the make and model of any and all equipment from January 1, 2015 to present;

11. Any documents listing any of Larry L. Peairs' (DOB 9/27/58; SSN: XXX-XX-2859) co-workers from January 1, 2015 to present;

12. Any and all documents regarding the corporate structure of Triple P Ranch, Inc., including but not limited to, executive management, safety personnel, chain of command, employees, hired help, and job descriptions and responsibilities and work performed from January 1, 2015 to present;

13. Any and all documents regarding the identity, name, address, employer, job title, job duties, and job assignments of any and all individuals who worked, services provided, maintained, and/or were assigned to work at Triple P Ranch, Inc. from January 1, 2015 to present;

14. Any and all documents pertaining to sales literature including, but not limited to sales brochures and promotional literature regarding products, livestock, or equipment (make and model) marketed, promoted, sold or used and dollar amounts of all sales at Triple P Ranch, Inc. from January 1, 2015 to present;

15. Any and all documents pertaining to purchases including, but not limited to, receipts and proof of purchase regarding products, livestock, or equipment (make and model) marketed, promoted, sold or used and dollar amounts of all purchases at Triple P Ranch, Inc. from January 1, 2015 to present;

16. Any and all documents pertaining to and/or reflecting the names of companies, individuals, or locations who supplied or sold products, livestock and/or equipment manufactured, marketed, promoted, sold or used within Triple P Ranch, Inc. from January 1, 2015 to present;

17. Any and all documents pertaining to the contents of any plans, drawings, blueprints, specifications, sketches, diagrams, or other documents of any type referring to, describing, reflecting, memorializing, or otherwise referencing any work or services of any kind performed by Triple P Ranch, Inc. or its subcontractors at the Triple P Ranch, Inc. from January 1, 2015 to present;

18. Any and all documents pertaining to the activities and day to day maintenance at Triple P Ranch, Inc. from January 1, 2015 to present;

19. Any and all documents pertaining to tax returns and schedules for Triple P Ranch, Inc. from January 1, 2015 to present, including but not limited to Schedule F (Form 1040), Schedule E (Form 1040), Form 4797 and Form 4835 from January 1, 2015 to present;

20. Any and all documents pertaining to ledgers for Triple P Ranch, Inc. from January 1, 2015 to present;

21. Any and all documents pertaining to an annual listing of assets and liabilities of Triple P Ranch, Inc. from January 1, 2015 to present.

(R. Doc. 25-4 at 10-11).

Plaintiffs seek an order quashing the subpoena and deposition notice because the information sought is disproportionate to the needs of this case, irrelevant, overly broad, and cumulative. (R. Doc. 25). Among other things, Plaintiffs assert that Defendant is aware that Plaintiffs "are not claiming lost wages nor any economic injury (excluding medical expenses) to themselves or to Triple P Ranch as a result of the subject automobile accident." (R. Doc. 25-1 at 7).

State Farm concedes that Plaintiffs are not seeking lost wages, but nevertheless argues that the information sought is relevant to obtain information regarding Mr. Peairs' "activity level and business transactions" given that he has testified that "he now experiences certain physical limitations which have affected operations on the ranch." (R. Doc. 29 at 5-6). State Farm asserts that Mr. Peairs' "activity level and business transactions" are "tied to the claims at issue in this case" and the information and testimony sought from Triple P Ranch, Inc. may "factually establish that plaintiffs had significantly and effectively shut down Triple P Ranch prior to the August 2018 accident." (R. Doc. 29 at 11). In other words, it appears that State Farm is seeking the foregoing information to impeach Mr. Peairs' deposition testimony that his injuries have affected his ability to perform certain work on the ranch or to otherwise demonstrate that Mr. Peairs' injuries are work related.

This is an action for recovery of UM coverage and bad faith penalties pertaining to injuries incurred as a result of an automobile crash. While the discovery regarding the operations of Triple P Ranch, Inc. and Mr. Peairs' employment may have some relevance to Plaintiffs' claims of damages, that relevance is minimal and based on unsupported speculation. To the extent State Farm is seeking information regarding Plaintiffs' pre-incident medical conditions, that information can be sought from their healthcare providers. The Court finds the information sought has minimal relevance and is not proportional to the needs of the case. *See Lewis v. 21st*

9

*Century Ins. Co.*, No. 18-5013, 2019 WL 8886266, at *2 (E.D. La. Mar. 28, 2019) (quashing subpoena to plaintiff's former employers seeking employment records where the plaintiff represented she was not seeking lost wages and information regarding the plaintiff's pre-incident health could be obtained from health care providers).

Notably, State Farm makes no attempt to demonstrate the relevance of any of the numerous categories of information sought, many of which are facially overly broad or irrelevant. For example, even under State Farms' theory that the operations of Triple P Ranch, Inc. was in decline prior to the 2018 accident (and that such decline is attributable to Mr. Peairs' pre-existing injuries), it remains unclear why State Farm would need to obtain nearly 7 years of data regarding such statistical information as the annual number of cows on the ranch, or bales of hay accumulated and their location, or fuel and veterinarian expenses incurred. At most, this information would be relevant to the calculation of any lost income or economic damages related to Triple P Ranch, Inc., which Plaintiffs are not seeking. The decline in the number of cows on the ranch over the course of 7 years has no direct bearing on Plaintiffs' injuries. The Court also must limit this discovery because information regarding Mr. Peairs' pre-incident health conditions can also be obtained from other more convenient, less burdensome, and less expensive sources (such as health care providers) and the discovery otherwise falls outside of the scope permitted by Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P 45(d)(4)(A)(iv) (requiring court to quash or modify a subpoena that subjects a person to undue burden).

State Farm invites the Court to limit the scope of the subpoena and Rule 30(b)(6) deposition notice to the extent it finds any "topic overly broad" rather than quash them in the entirety. (R. Doc. 29 at 11). Again, State Farm makes no specific effort to identify the relevance of any of the specific categories for which it seeks the production of documents and deposition

10

testimony. Instead, State Farm relies on its vague assertion that the "Peairs' activity level and business transactions" are "tied to the claims at issue in this case." (R. Doc. 29 at 11). In serving a Rule 45 subpoena on a non-party, it was State Farm's duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1); *see also* Fed. R. Civ. P. 30(b)(6) ("Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination."). Accordingly, State Farm had a duty to determine whether serving a subpoena seeking 7 years of information regarding livestock and bales of hale from a non-party in an action involving personal injuries resulting from an automobile crash falls within the scope of discovery. The Court declines State Farm's invitation to comb through its subpoena and deposition topics to determine whether any limitations on those topics would render them within the scope of discovery.

In sum, State Farm has not demonstrated that any of the information sought with respect to Triple P Ranch, Inc. falls within the scope of discovery provided by Rule 26. Furthermore, any relevant and proportional information sought in the subpoena pertaining to Mr. Peairs' alleged injuries can be obtained by more convenient and less burdensome methods, such as from treating physicians and the Plaintiffs' own deposition testimony. Indeed, State Farm questioned Mr. Peairs at his June 23, 2021 deposition regarding the operations of Triple P Ranch, Inc. It appears that State Farm is now attempting to re-depose Mr. Peairs on those same issues in his capacity as a Rule 30(b)(6) representative. State Farm has not satisfactorily explained, however, why any relevant and proportional information regarding Mr. Peairs' employment and activities with Triple P Ranch, Inc. or any other endeavors could not be (and was not) obtained at the June 23, 2021 deposition.

**III.    Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' Motion to Quash Subpoena Duces Tecum and Notice of Corporate Deposition of Triple P Ranch, Inc. (R. Doc. 25) is **GRANTED**. The subpoena and deposition notice are hereby **QUASHED** and the discovery sought from Triple P Ranch, Inc. is not permitted**.**

Signed in Baton Rouge, Louisiana, on November 17, 2021.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**